## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| ZACHARY PAUL CRUZ | ) | |
| 47 South Windsong Court | ) | |
| Fishersville, Virginia 22939 | ) | Case No. 5:22-cv-00064 |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHERIFF DONALD L. SMITH, in his | ) | |
| individual capacity, | ) | |
| 127 Lee Highway | ) | |
| Verona VA, 24482 | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| MAJOR BRIAN JENKINS, in his | ) | |
| individual capacity, | ) | |
| 127 Lee Highway | ) | |
| Verona VA, 24482 | ) | |
| | ) | |
| | ) | |
| LINDSAY COMBS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
|       and; | ) | |
| | ) | |
| JOHN DOE 1 – 3 | ) | |
| _____ | ) | |

1

## PLAINTIFF'S ORIGINAL COMPLAINT

1.     The Plaintiff files this Complaint against Defendants pursuant to 42 U.S.C. § 1983 and other applicable Virginia law for the enforcement of his rights under the First, Fourth, and Fourteenth Amendment of the U.S. Constitution against the Defendants.

In support thereof, the Plaintiff states as follows:

## INTRODUCTION

2.      The claims in this case against the DONALD L. SMITH and MAJOR BRIAN JENKINS arise from the Defendants' actions taken in the ascertaining and execution of a search warrant dated October 05, 2022, issued by an Augusta County magistrate [see CM22000412-00] for the Plaintiff's residence ("**Search Warrant**"). Further, against LINDSAY COMBS, the claims in this case arise from her conduct involving harassment and intimidation of the Plaintiff, and abusing the powers of her office to discriminate against the Plaintiff on account of the Plaintiff's relationship with Nikolas Cruz, the convicted gunman in the Parkland school shooting ("**School Shooting Incident**").

*(A copy of the Search Warrant is herein attached as **EXHIBIT A (SEARCH WARRANT))***

3.     The search warrant, executed in the early morning hours of October 5th, 2022, was never produced for the inspection of any member of the Plaintiff's residence until after the search was largely completed. A copy of the search warrant was requested from officers on the scene, but a copy wasn't provided until more than 4 hours after the execution of the search. The warrant was based on indictments issued against Micheal

Donovan and Richard Moore for exploiting a mentally incapacitated person and obtaining money by false pretenses. Plaintiff was shocked to learn that he was the alleged victim.

*(A copy of the Affidavit of ZACHARY PAUL CRUZ is herein attached as* **EXHIBIT B (CRUZ AFFIDAVIT))**

4.      Plaintiff has consistently told his attorneys, law enforcement, and a federal grand jury that he is not a victim, that Donovan and Moore did not steal from him, that he is of sound mind, and that he is not mentally incapacitated. Id.

5.      Plaintiff told his attorney Mario Williams, Donovan and Moore that he wanted to give his insurance benefit to Nexus, so that he could help people similarly situated to himself. Id.

6.      Donovan told the Plaintiff that he couldn't accept the gift, because he and Moore wanted to see the Plaintiff spend the money on things that would make him happy. Id.

7.      Plaintiff asked Donovan and Moore if he could give the money to Nexus and receive a transfer of money to him each week, which Donovan and Moore agreed to do. Id.

8.      Plaintiff asked Donovan and Moore to make travel arrangements, purchases, and transfers during trips and when the Plaintiff wanted to spend more than his weekly transfer. Plaintiff believed this would make it easier to avoid reckless large purchases he might regret later.

9.      Since receiving his insurance benefit in the total amount of $ 426,760.47, Plaintiff

has received cash transfers or purchases on his behalf from DONOVAN and MOORE totaling over $460,000.  Id.

10.     When racist law enforcement and prosecutors in Augusta County couldn't intimidate and harass Plaintiff to turn on Donovan, their political enemy, they engaged in a violent raid that left the Plaintiff, the alleged "victim", held at gunpoint and handcuffed for several hours on public display in the street. Plaintiff was not offered assistance, asked if he was a victim, asked if he was okay, or asked if he needed assistance after the search. Upon information, the search served the very real function of attempting to intimidate the Plaintiff and his family. Id.

11.     It is pertinent to highlight the relevant facts from the School Shooting Incident. Briefly stating, on February 14, 2018, Nikolas Cruz, the Plaintiffs brother, was alleged to have entered the Marjorie Stoneman Douglas High School in Broward County, Florida, killing seventeen (17) people. Due to the School Shooting Incident, Nikolas Cruz was charged with 17 counts of murder, among other charges. The Federal Bureau of Investigation ("**FBI**"), the Florida Department of Law Enforcement, and Broward Sheriff Deputies were conducting an exhaustive investigation and preparing to try Nikolas Cruz, primarily arguing that Nikolas Cruz is sane, or that he was legally able to stand trial for the offenses with which he has been charged. On the other hand, upon information in the instant case, LINDSAY COMBS is basing her case on baseless assertions that the Plaintiff is not sane or otherwise capable of making his own decisions.

12.     This is a complaint against the Supervisor of the Adult Protective Services unit at Shenandoah Valley Social Services (hereinafter "APS"), in her individual capacity, for abusing the authority of her office to extend and contort an otherwise routine exploitation investigation for ulterior, inappropriate purposes, causing Plaintiffs great harm.

13.     With respect to the Plaintiff's case, the Defendants initiated an investigation upon a referral from FBI agent, Jane Collins, and after receiving an unverified allegation from an unnamed "Confidential Informant" ("**Informant**") which alleged that MICHEAL DONOVAN AND RICHARD MOORE had taken the Plaintiff against his will, held him captive and were financially exploiting the Plaintiff; and the Plaintiff was identified as "retarded" by the Informant. However, such allegations are demonstrably not true and have consistently been refuted by the Plaintiff.   The Plaintiff is neither mentally incapacitated nor did Donovan or Moore take him against his will to Virginia, nor held him captive, nor financially exploited him, and that the Plaintiff is of sound mind, having sound and reasonable judgment. Id.

14.     Despite these facts, which she confirmed with two separate attorneys for the Plaintiff, LINDSAY COMBS, with absolutely no evidence, made up a fantastical story suggesting that Donovan and/or Moore kidnapped, drugged, imprisoned, and exploited Plaintiff. LINDSAY COMBS also referred to Plaintiff as "retarded" in a court filing, even after receiving confirmation from his counsel that the allegations were preposterous. Id. In making up such untrue statements, LINDSAY COMBS, guided by an insatiable desire to gain personal notoriety, perverted a simple investigation of an anonymous

Informant to a "joint investigation" with the FBI. Seeing an opportunity for notoriety and an opportunity to help her friend, Sheriff Donald Smith, LINDSAY COMBS ignored the facts and proceeded with an unhinged investigation designed to inflict harm on Plaintiff. Id. The goal of the investigation became an illegitimate scheme aimed at directly benefiting her friend and ultimately creating an opportunity to garner notoriety for herself. Local activists discovered evidence that a Staunton Newsleader reporter investigating the Sheriff had been subjected to an illegal search after she allegedly spoke with three juvenile sex assault victims who made allegations against law enforcement in the Augusta County Sheriffs Office. The reporter claims she left her position after the search and further harassment from the Augusta County Sheriff.

> *(A transcript of an audio recording of Staunton Newsleader reporter Ayano*
> *Nagaishi is herein attached as **EXHIBIT C (NAGAISHI TRANSCRIPT)**)*

15.     FBI Agent Collins, as special agent of the FBI in Charlottesville, would have also had a duty to investigate the allegations against the Sheriff. Instead, upon information Agent Collins was used by LINDSAY COMBS to radically expand the power and scope of her agency's authority in an effort to harm the Plaintiff and protect from exposure the Sheriff's potential wrongdoing, and social services' cover up of those allegations.

16.     The purpose of this "joint investigation" no longer had anything to do with determining the validity of the original kidnapping, drugging, and financial exploitation allegations, which were already proven to be false. Rather, upon information the ulterior purpose behind Defendant's "joint investigation," and the unifying bond between

Defendant and Agent Collins, was their personal antipathy against Plaintiffs' family, and in particular, his family's work to expose the crimes committed by the Sheriff of Augusta County, which are/were the responsibility of LINDSAY COMBS and Agent Collins to investigate.

17.    Upon information, LINDSAY COMBS had a further ulterior motive in wanting to assist the FBI in obtaining testimony from the Plaintiff that could have been useful in the prosecution of his brother, Nicholas Cruz.

18.    Frustrated by the restrictions the law places on her agency, and in an effort to avoid providing the Plaintiff due process by access to a competency hearing, LINDSAY COMBS instead filed an extraordinary, secret *ex parte* motion for extraordinary relief.

*(A copy of the ex parte motion filed by LINDSAY COMBS is herein attached as*

***EXHIBIT D (EX PARTE MOTION))***

19.    On March 12, 2021, Defendant COMBS received a letter from the Plaintiff, through counsel, the day prior to her ex-parte motion, stating that the Plaintiff felt harassed, and asking for a hearing so that evidence could be presented. COMBS ignored that request and sought the ex-parte hearing instead, the very next day. Id.

20.    In concocting the "joint investigation", LINDSAY COMBS radically expanded the authority of her agency, requesting an order to enter Plaintiff's residence, arrest Plaintiff, and search the home and question its occupants. Defendant even went so far as to make a court filing (referenced in paragraph 20) in support of her "joint investigation" that requested the FBI—not APS nor any state law enforcement agency—to be present

during APS's warrantless entry onto Plaintiff's home residence under the pretext of interviewing the Plaintiff. The Defendant's request, which was granted by a Judge in the Augusta County Circuit Court, permitted the forced entry into the Plaintiff's residence, and permitted the FBI and APS to arrest the Plaintiff and take him, an adult, to a "child advocacy center" to be interviewed by "specialists". The FBI could never secure such access without probable cause but for Defendant's abuse of the APS proceedings. In seeking the Search Warrant, LINDSAY COMBS failed to notify the Court that the two attorneys for Plaintiff had confirmed that the allegations were false.

*(A copy of the Affidavit of ZACHARY PAUL CRUZ is herein attached as* **EXHIBIT B (CRUZ AFFIDAVIT)***)*

LINDSAY COMBS also continued to claim the existence of a "joint investigation" with the FBI as justification for her shocking behavior.

21.    LINDSAY COMBS also knowingly assisted Agent Collins's efforts to circumvent the FBI policy that precludes contact with persons represented by counsel. Specifically, LINDSAY COMBS used the pretext of her "joint investigation" to contact the Plaintiff on Agent Collins's behalf, not for the purpose of investigating APS's concerns, but rather to provide a pretextual basis for Agent Collins to gather information about the Plaintiff, unrelated to APS's legitimate interests.

22.    Due to the Defendant's abuse of process in establishing a rogue "joint investigation" between APS and a federal agent, Plaintiff was forced to approach APS's civil inquiries as if they were effectively communications to the FBI. This was done

while the Plaintiff's brother's death penalty trial was pending, and the Plaintiff wanted to have counsel present for any questioning that could relate to his brother's case. COMBS demanded to interrogate Plaintiff without counsel present. The injection of this improper criminal component caused Plaintiff's counsel to advise Plaintiff against consenting to APS's interview requests, which, in an unvirtuous circle, enabled APS to further extend its investigation and seek court redress for forced access to an "uncooperative" Plaintiff. Id. This is after two independent counsels for Plaintiff had provided statements and assurances on behalf of him to dispel the fake investigation into exploitation. Id.

23.     Further, on March 30, 2021, Ronald Huber, Managing United States Attorney for the Western District of Virginia, confirmed in an email to counsel to Donovan, that there was no real "joint investigation". In his own words, Huber wrote: "*To be clear, there is no "joint" investigation between our office and the Shenandoah Valley Adult Protective Services, Child Protective Services, or any other state agency.*"

*(A copy of Huber's email is herein attached as **EXHIBIT E (HUBER'S STATEMENT)**)*

## PARTIES

24.     Plaintiff, ZACHARY PAUL CRUZ, is a resident of Augusta County, Virginia.

25.     SHERIFF DONALD L. SMITH, is the elected official in charge of the Augusta County Sheriff's Office ("Sheriff's Office") and otherwise is a resident of Augusta County, Virginia. DONALD L. SMITH, in his individual capacity, is a "person" for purposes of 42 U.S.C. § 1983.

26.     MAJOR BRIAN JENKINS is an employee of the Sheriff's Office and otherwise is a resident of Augusta County, Virginia. MAJOR BRIAN JENKINS is a "person" for purposes of 42 U.S.C. § 1983.

27.     LINDSAY COMBS is a resident of Augusta County, Virginia, and upon information and belief is a supervisor with Adult Protective Services, a state agency of the Commonwealth of Virginia. LINDSAY COMBS, in her individual capacity, is a "person" for purposes of 42 U.S.C. § 1983.

## JURISDICTION

28.     Plaintiff asserts claims against all Defendants based on federal law as well as related legal claims based on Virginia law. Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

29.     All parties are residents or citizens of Virginia, and most of the relevant events occurred in Virginia.

30.     A substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District and Division and Defendants reside and/or transact business in this District and Division.

31.     Therefore, this Court also has personal jurisdiction over all the parties named in this action.

## VENUE

10

32.     All the Defendants reside in Augusta County, Virginia, and the relevant events at issue, in this case, took place in Augusta County, Virginia. Therefore, the venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

33.     Moreover, given the location of the parties, filing in the Harrisonburg Division of this District Court is appropriate.

## FACTS

### Summary of Complaint

34.     In summary, DONALD L. SMITH conducted illegal arrests and unlawful searches in an effort to shut down protests, punish young activists, chase away investigative reporters, and hide evidence of his own criminal behavior. The Sheriff has targeted the Plaintiff and his family, engaging in illegal arrests of Plaintiff and his family members. On October 5, 2022, the Defendants, in the name of "helping" the Plaintiff, decided to ignore his attorneys' statements, ignore the Plaintiff's own testimony, ignore his Constitutional rights, and dispatch a squad of heavily armed sheriff deputies to raid the Plaintiff's residence, hold him at gunpoint, and detain him for several hours. They never offered him assistance nor asked him if he needed help. It is clear that the Defendants did not aim to help the Plaintiff; rather, they want to punish him for his speech and that of his family.

*(A copy of the Affidavit of ZACHARY PAUL CRUZ is herein attached as*

*EXHIBIT B (CRUZ AFFIDAVIT))*

**The Execution of the Warrant: Supposed Victim, Plaintiff was Held at Gunpoint and Detained for Five Hours Without Cause**

11

35.    At least twenty (20) deputies of DONALD L. SMITH arrived at the Plaintiff's residence to execute the Search Warrant at approximately 8:00am on October 05, 2022. A similar number of deputies simultaneously raided the Nexus corporate campus, including a separate office used by Plaintiff and other BLM protestors to meet, organize, and store protest materials. Id.

36.    The deputies seized hundreds of lapel stickers containing images of DONALD L. SMITH and his close friend Felix Chujoy, opposing the Sheriff's reelection to office. The deputies also seized documents and evidence, including video evidence of crimes committed by DONALD L. SMITH related to two minor boys who reported being sexually molested by DONALD L. SMITH or his deputies.

> *(A copy of the Affidavit of MICHAEL PHILLIPS is herein attached as*
> ***EXHIBIT F (PHILLIPS AFFIDAVIT))***

37.    During the execution of the Search Warrant, deputies from DONALD L. SMITH's office removed the Plaintiff from his residence, secured him with handcuffs, and kept him on the hood of a police car, in a metal chair in the middle of the street, and then sitting in the back of a police car in the residence's cul-de-sac for more than five (05) hours.

> *(A copy of the Affidavit of ZACHARY PAUL CRUZ is herein attached as*
> ***EXHIBIT B (CRUZ AFFIDAVIT))***

38.    The list of property seized pursuant to the Search Warrant is extensive, and contains many items that belong to the Plaintiff, including game systems, cellphone, and other communication devices upon which Plaintiff relies.

*(A copy of the list of property seized by DONALD L. SMITH in execution of*

*Search Warrant is herein attached as **EXHIBIT G (LIST OF SEIZED PROPERTY)**)*

## CLAIMS

**COUNT I: Violation of Civil Rights – Unreasonable Detention (42 U.S.C. § 1983)**
**(Against All Defendants)**

39.    Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

40.    In executing the Search Warrant on October 5, 2022, the Sheriff's Office deputies removed the Plaintiff from his Residence and made him stand in the cul-de-sac outside the home.

*(A copy of the Affidavit of ZACHARY PAUL CRUZ is herein attached as*

***EXHIBIT B (CRUZ AFFIDAVIT)**)*

41.    Despite having dozens of deputies to effect the Search Warrant and search the residence, with VSP officers providing site security, Sheriff's Office deputies – at the direction of Major BRIAN JENKINS and JOHN DOES 1 and 2, and under the authorization of SHERIFF SMITH – hand-cuffed the Plaintiff while he remained standing (or sitting) in the cul-de-sac during the search for five (05) hours.

42.    When the deputies detained the Plaintiff, he was initially forced to sit on the hood of a police vehicle. The Plaintiff continued to slide off the car, at which point he was

placed on a metal chair in the street, in handcuffs. Later Plaintiff was placed in an Augusta County Sheriffs vehicle, where he was sat next to an AR-15 (a gun similar to the one used by his brother in the Parkland school shooting). Upon information, the police used this weapon to intimidate and harass the Plaintiff, as four other individuals detained were not placed in proximity to an AR-15 while being detained. Id.

43.    Such conduct by the Defendants is against the Plaintiff's rights under the Fourth Amendment of the U.S. Constitution which guarantees citizens the right to be secure in their person and prevents the Government and its officials from detaining citizens without sufficient cause and in an unreasonable manner. However, DONALD L. SMITH, in both his official capacity as Sheriff responsible for executing the Search Warrant, and upon information in his individual capacity to punish Plaintiff, authorized his deputies to detain Plaintiff with handcuffs, despite the absence of any threat to the deputies' safety or to the integrity of the search.

44.    The search warrant and indictments used to justify the search were illegally obtained, as both processes used out of context quotes from Grand Jury testimony of the Plaintiff given in Charlottesville in the United States District Court for the Western District of Virginia. Plaintiff has confirmed through counsel that the United States has not sought to unseal Plaintiff's Grand Jury testimony, making its use by state authorities and its release to the public a violation of Federal law.

45.    The Plaintiff is the alleged victim, according to Defendants' own affidavits and charging documents. As an alleged victim, the treatment described herein violated the Constitutional and Civil rights of the Plaintiff, causing him damage.

**COUNT II: Violation of civil rights – Seizure based on insufficient probable cause**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

46.    Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

47.    "[A] police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or 'with reckless disregard for the truth' makes materially false statements or omits material facts." *Miller v. Prince George's Cty.,* 475 F.3d 621, 631 (4th Cir. 2007) (quoting *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). The Fourth Circuit in *Miller* thus explained that a plaintiff could proceed on a claim that a "seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest" by showing that the defendant "deliberately or with a reckless disregard for the truth made material false statements in his affidavit . . . or omitted from the affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller*, 475 F.3d at 627

48.    Based on the facts presented above and the judgement quoted, it is clear that Sheriff DONALD L. SMITH and Major BRIAN JENKINS conspired to fabricate an unreasonable probable cause for the Search Warrant.

49.     The search warrant and indictments used to justify the search were illegally obtained, as both processes used out of context quotes from Grand Jury testimony of the Plaintiff given in Charlottesville in the United States District Court for the Western District of Virginia. Plaintiff has confirmed through counsel that the United States has not sought to unseal Plaintiff's Grand Jury testimony, making its use by state authorities and its release to the public a violation of Federal law.

50.     The Plaintiff is the alleged victim, according to Defendants' own affidavits and charging documents. As an alleged victim, the treatment described herein violated the Constitutional and Civil rights of the Plaintiff, causing him damage.

**COUNT III: Conspiracy to deprive citizen of Fourth Amendment protections**
**(42 U.S.C. § 1983)**
**(Against All Defendants)**

51.     Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

52.     Sheriff DONALD L. SMITH wanted to punish the Plaintiff for he and his family's political activism against the ACSO as well as what he perceived as personal attacks against him by Plaintiff, including accusing DONALD L. SMITH of having a relationship with a man who was convicted in a human trafficking case and who was arrested for soliciting sex from a child and filing a complaint against DONALD L. SMITH for perjury.

16

53.    The Defendants wanted to expel Plaintiff from their community because, as Augusta County Commonwealth Attorney Tim Martin has written about the family, "*they do not deserve aid or comfort in a decent society like this one*".

(A copy of Tim Martin's email is herein attached as **EXHIBIT H (TIM MARTIN'S EMAIL))**

54.    Defendants' actions in creating the affidavit written by MAJOR BRIAN JENKINS ("**MAJOR BRIAN JENKINS's Affidavit**") caused the ACSO to conduct a search of the residence and the Nexus offices, which led to the seizure of Plaintiff personal property without any probable cause (i.e., based on false pretenses), which violated Plaintiff's Constitutional and Civil rights, causing him damage.

(A copy of MAJOR BRIAN JENKINS's Affidavit is herein attached as **EXHIBIT I (MAJOR BRIAN JENKINS'S AFFIDAVIT))**

### COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Virginia Common Law Tort Claim)
### (Against All Defendants)

55.    Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

56.    Defendants knew that the accusations that the Plaintiff was or is mentally incapacitated were false. Despite this knowledge, the Defendants used this falsity as the basis to raid the Plaintiff's home and seize his personal belongings.

57.    DONALD L. SMITH further acted to cause Plaintiff great public embarrassment and harassment by issuing a press release describing false charges claiming that the

Plaintiff is mentally incapacitated, and by releasing Plaintiff's personal and financial information.

58.     Defendants used an "out of context" portion of federal grand jury testimony, which was received illegally in violation of Federal Rule 6(e), regarding Grand Jury secrecy rules. No order exists unsealing the grand jury testimony that was used in Defendant's search warrant affidavit, making its sharing and release to the media a serious violation of federal law.

59.     These actions by Defendants caused the Plaintiff to suffer and continue to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety, and to incur damages.

**COUNT V: PUNITIVE DAMAGES**
**(42 U.S.C. § 1983 and Virginia Common Law)**
**(Against All Defendants)**

60.     Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

61.     The Defendants conducts elaborated on in paragraphs above is egregious, willful, and wanton and requires the imposition of punitive damages to deter the Defendants from causing such harm and distress to any other member(s) of the community.

**COUNT VI: Defamation Per Se**
**(Virginia Common Law)**
**(Against All Defendants)**

62.     Plaintiff realleges all the foregoing allegations and incorporates them herein by reference.

63.     Following the execution of the Search Warrant, DONALD L. SMITH published the MAJOR BRIAN JENKINS' Affidavit supporting the Search Warrant with local news organizations in Virginia. The details and contentions in the MAJOR BRIAN JENKINS' Affidavit that the Plaintiff is mentally incapacitated are factually untrue.

64.     Accusing a person of being mentally incapacitated, when they are not, is clearly defamatory on its face. Alternatively, accusing a person of being mentally incapacitated, when they are not, is defamatory by implication. Accusations of an individual's mental incapacitation in an affidavit filed in court and used as the basis for Search Warrant that a magistrate signed are not a mere expression of opinion as reasonably understood by the average person because it can be, and is, provably false. Moreover, accusations of an individual being mentally incapacitated, when they are not, in an affidavit filed in court and used as the basis for a search warrant that a magistrate signed are not rhetorical hyperbole as would be reasonably understood by the average person.

65.     A reasonable person would understand the Affidavit to convey a (false) representation of fact. DONALD L. SMITH published the MAJOR BRIAN JENKINS's Affidavit in a manner that created a substantial danger to Plaintiffs' reputation and personal safety. DONALD L. SMITH also published the MAJOR BRIAN JENKINS's Affidavit with actual malice, personal spite, and ill-will, independent of the occasion on which the communication was made, and with the specific intent to harm Plaintiff, his family, and their reputation, and actually causing Plaintiff compensable damages.

### COUNT VII: Harassment Motivated by Racism
### (Virginia Code 8/01-42.1)

**(Against All Defendants)**

32. The Plaintiff realleges all the foregoing allegations and incorporates those allegations herein by reference.

33. The Plaintiff has been subjected to acts of intimidation and harassment by the Defendants.

34. Such acts were motivated by racial, religious, or ethnic animosity.

35. The Plaintiff has been damaged as a result of the Defendants' actions.

36. Pursuant to Va. Code 8.01-42.1, the Plaintiff is entitled to compensatory and punitive damages, costs and attorney's fees

## PRAYER

WHEREFORE, the Plaintiff, through undersigned counsel, prays that this Court enters a judgment declaring that the Plaintiff be awarded:

66.    actual and punitive damages, in an amount to be proved at trial;

67.    costs, including reasonable attorneys' fees under 42 U.S.C § 1988(b) (as well as any other applicable provision); and

68.    such other and further relief as the Court deems just and proper.

DATED THIS 2nd DAY OF NOVEMBER, 2022

**JURY TRIAL DEMANDED**

**Respectfully Submitted By:**

/s/ Christopher M. Okay
CHRISTOPHER M. OKAY  VSB#35611

Chris Okay, Attorney at Law
117 S. Lewis Street, Suite 218
Staunton, Virginia 24401
(540) 466-3130
chrisokay@icloud.com